

FILED
JAN 2 2 2020
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 2:20CR 3 |
| | ) | |
| v. | ) | 18 U.S.C. § 371 |
| | ) | Conspiracy to Commit Larceny of |
| | ) | Government Money |
| MICHAEL KITREL, | ) | (Count One) |
| | ) | |
| Defendant. | ) | 18 U.S.C. § 981(a)(1)(C) |
| | ) | Criminal Forfeiture |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

1. The defendant, Michael Kitrel ("KITREL") registered L&K Technology and Logistics (L&K) on June 3, 2014. L&K was a Virginia-based Limited Liability Company (LLC) headquartered at KITREL's home in Chesapeake, Virginia with the purported purpose of fulfilling government contracts for the United States Navy (USN).

2. L&K's sole place of business and principal office was KITREL's home in Chesapeake, Virginia.

3. L&K maintained no inventory or warehouse, was not registered to do business with the Department of Defense, and had only two employees. L&K never purchased any military training devices or goods, never held any such items in inventory, and never made deliveries of any such items to the USN.

4. L&K had no business expenses whatsoever, and thus operated at one hundred percent profit.

5. RUDOLPH PRINCE is a naval officer who had authority to purchase goods for his unit.

6. COURTNEY CLOMAN is a naval officer and received payment from KITREL for his assistance with the operation of L&K.

7. Contracting Firm V (Firm V) is located in San Diego, California. Firm V is a veteran owned, professional service firm that provides logistical support services to industry and government agencies.

## COUNT ONE

1. The allegations contained in the "Introductory Allegations" section of this Criminal Information are re-alleged and incorporated by reference as if fully set forth herein.

## THE CONSPIRACY

2. From on or about May 2014, and continuing until in or around February of 2015, in the Eastern District of Virginia and elsewhere, KITREL, PRINCE, and CLOMAN, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, to commit an offense against the United States, to wit: larceny of government money, in violation of Title 18, United States Code, Section 641.

## THE PURPOSE OF THE CONSPIRACY

3. The purpose of the conspiracy was for KITREL, PRINCE, and CLOMAN to personally profit by steering USN procurement contracts to a sham company, and by submitting false and fraudulent purchase documents to the USN for the fraudulent purchase of inert training devices.

## WAYS MANNER AND MEANS OF THE CONSPIRACY

The ways, manner and means by which the conspiracy was carried out included, but were not limited to, the following:

4. It was part of the conspiracy for KITREL and CLOMAN to open L&K at the suggestion of PRINCE.

5. It was part of the conspiracy for L&K to purport to be vendors of inert explosive training aids for USN use.

6. All conspirators understood that KITREL would participate in the conspiracy by initially registering L&K, by managing L&K's money, and by at times assisting in the generation of L&K sales documents.

7. It was part of the conspiracy that day-to-day business for L&K would be conducted under the alias "David Freese," using an L&K Gmail account, from KITREL's home in Chesapeake, Virginia, in the Eastern District of Virginia, and elsewhere.

8. It was part of the conspiracy that PRINCE would steer business to L&K by ensuring that his unit would grant procurement contracts to L&K, using Firm V as an intermediary.

9. It was part of the conspiracy for PRINCE to sign and date packing slips on behalf of his USN unit indicating that L&K had delivered products to the USN when in fact they had not.

10. It was part of the conspiracy that KITREL, PRINCE, and CLOMAN would transmit, and cause others to transmit, by means of wire communication in interstate commerce, writings, and signals, specifically, emails, for the purpose of defrauding the USN.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

11. In May 2014, PRINCE informed KITREL and CLOMAN that PRINCE could direct Government contracts to businesses of his choosing. PRINCE told the two that all they needed to do was establish an LLC, and "front" money for the business.

12. In June 2014, KITREL and CLOMAN went to an attorney's office together, where KITREL then established L&K with KITREL as member and L&K having a business address at KITREL's home located in Chesapeake, Virginia.

13. On June 24, 2014, KITREL established an L&K bank account at BB&T.

14. On or about June 18, July 9, December 10, and December 15, 2014, PRINCE created fraudulent purchase requests for L&K-specific inert training devices for his unit.

15. ·For each purchase request, PRINCE collaborated with either KITREL, CLOMAN, or both, to create sales quotes for L&K inert training aids. "Dave Freese" was held out as generating these quotes and sending them to Firm V.

16. On July 17, 2014, KITREL deposited a check he received in the mail from Firm V, dated July 9, 2014, in the amount $21,000.00, into the L&K business bank account at BB&T.

17. On August 19, 2014, KITREL deposited another check he received in the mail from Firm V, dated August 14, 2014, for $83,394.00, into the L&K business bank account at BB&T.

18. On January 22, 2015, KITREL deposited a check that he received from Firm V, dated January 14, 2015, and worth $55,692.00, into the L&K business bank account at BB&T.

19. On February 23, 2015, KITREL deposited a check he received from Firm V, dated February 5, 2015, and worth $30,300.00, into the L&K business bank account at BB&T.

20. Emails sent as "David Freese," were transmitted from KITREL's home in Chesapeake, Virginia, in the Eastern District of Virginia, and elsewhere, and traveled through interstate commerce via the internet.

21. For his participation with L&K, KITREL personally obtained approximately $78,000.00 in fraud proceeds.

22. In total, the USN provided L&K approximately $190,386.00 despite receiving nothing in return.

(In violation of Title 18, United States Code, Section 371).

## FORFEITURE

1. The defendant, if convicted of the violation alleged in count one of this information, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture of any other property of the defendant, as subject to forfeiture under Title 21, United States Code, Section 853(p).

3. The assets subject to forfeiture include, but are not limited to:

   a. A monetary judgment in the amount of not less than $78,000.00, representing the proceeds of count one obtained by KITREL.

(In accordance with 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2)(A); 28 U.S.C. § 2461(c).)

Respectfully submitted,

G. ZACHARY TERWILLIGER
United States Attorney

By: _____
Matthew Heck
Special Assistant United State Attorney
U.S. Attorney's Office
101 W. Main Street, Ste. 8000
Norfolk, Virginia 23510
Office Number – 757-441-3221
matthew.heck@usdoj.gov